Filed 12/3/15  In re E.B. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re E.B., a Person Coming Under the Juvenile Court Law. | B261722 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. V.B., Defendant and Appellant. | (Los Angeles County Super. Ct. No. DK07634) |

APPEAL from orders of the Superior Court of Los Angeles County, Marguerite Downing, Judge.  Affirmed in part; reversed in part.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Tyson B. Nelson, Deputy County Counsel, for Plaintiff and Respondent.

_____

Father V.B. appeals from the January 8, 2015 jurisdictional order sustaining a Welfare and Institutions Code section 300[1] petition as to his daughter, E.B., and the dispositional order placing her with father but requiring father to comply with certain substance abuse-related conditions. We find no substantial evidence supported the juvenile court's jurisdictional order with respect to father and therefore reverse the findings identifying father unfit. Because the jurisdictional order is reversed with respect to father, the dispositional order as to father must be vacated as moot. (*In re Destiny S.* (2012) 210 Cal.App.4th 999, 1005 (*Destiny S.*).) The juvenile court maintains jurisdiction based on mother's conduct, and she is not a party on appeal.[2] (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397.)

## FACTUAL AND PROCEDURAL BACKGROUND

E.B. came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) on September 19, 2014. That day, mother was taken into custody for a 72-hour hold (§ 5150) as the result of father's 911 call reporting mother's erratic behavior. Mother left an open box-cutter on the bed, about two feet from where one-year-old E.B. was sleeping. Mother was diagnosed with paranoid schizophrenia many years before she became pregnant with E.B. but stopped taking her prescribed psychotropic medications during her pregnancy. Mother did not resume taking those medications after E.B. was born in September 2013; by September 2014, mother did not want to do so because she was pregnant again. Father told the social worker court involvement was necessary because mother was unlikely to abide by a voluntary family maintenance contract. Mother eventually submitted on the petition.

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]    Even though the jurisdiction order was appropriate as to mother and she does not contest it on appeal, review of the findings as to father is proper because they serve as the basis for the dispositional order also challenged on appeal and could potentially impact future dependency proceedings. (*In re Quentin H.* (2014) 230 Cal.App.4th 608, 613; *In re Drake M.* (2012) 211 Cal.App.4th 754, 762; *In re Daisy H.* (2011) 192 Cal.App.4th 713, 716.)

When interviewed at the family's apartment on September 24, 2014, father produced a current medical marijuana identification card (see Health & Saf. Code, § 11362.7, subd. (g)); he told the social worker he used medical marijuana twice a week; he did not use in E.B.'s presence or when she was in his care; and father showed no signs of being under the influence of any substance. There were no drugs or drug paraphernalia in his home. Mother later told the social worker that father has had a marijuana license ever since she met him and has smoked daily outside of E.B.'s presence. Mother stated that father was not a "substance abuser." Mother also reported that she was upset at father for reporting her conduct.

The social worker advised father to "buy a locked box to keep marijuana and paraphernalia in, ensure at least one person is always sober to watch the child, to never use in the presence of the child, and to use in moderation." Father indicated that he understood.

E.B. was detained from mother the next day and placed with father. DCFS concluded that E.B. should remain in father's care as long as mother did not reside in the family home. Following a detention hearing on September 30, 2014, mother and father were both ordered to drug-test pending the jurisdictional hearing, which was set for November 10. Father tested positive for marijuana on October 21 and November 5.[3]

For the November 10, 2014 jurisdictional hearing, DCFS reported that E.B. was doing well living with father. Father told the social worker he had been using marijuana for 20 years; his medical marijuana identification card expired sometime in October 2014, but he intended to renew it. Father stated that marijuana did not interfere with his ability to parent E.B. or to work. The social worker noted that father was employed and had extended family support. The social worker further reported that E.B. was "developmentally on track for her age." E.B. had no "mental or emotional issues."

By the time of the January 8, 2015 hearing, father had a valid medical marijuana identification card, but there is no evidence of when he obtained it. Mother was planning to return to the family home and father was moving with E.B. to his aunt's home.

---

[3]    Father did not provide a specimen on November 20, 2014, and on December 4, 2014.

The juvenile court denied DCFS's request to dismiss paragraph b-3 of the petition, which alleged father was a past and current substance abuser. The court reasoned that father did not have a valid marijuana identification card when he tested positive for marijuana the previous October, at which time E.B. was in his care. Turning to the merits of the allegations, father's and the minor's counsel both urged dismissal of paragraph b-3. E.B.'s counsel pointed out that father and E.B. were living with paternal relatives and there was no evidence that father had ever been under the influence of marijuana while caring for E.B. alone; further, there was also no evidence that E.B. had suffered any serious physical harm or was at risk of suffering serious physical harm as a result of father's medical marijuana use. The juvenile court declined to dismiss paragraph b-3, commenting that if father had a valid marijuana license it would have ruled differently. The court sustained the allegations based on mother's mental and emotional problems (paragraph b-1) and father's past and present substance abuse (paragraph b-3).[4]

The juvenile court made the following dispositional order relating to father's medical marijuana use: "[I]f [DCFS] verifies he has a valid California—I mean a valid marijuana license, I'm going to order six random test[s], and as long as [they are positive only for] marijuana, there's not going to be any issue, but if the levels rise, if he fails to test, he's going to need to do a program." At DCFS's request, the court increased the number of random tests to 10. It denied DCFS's request for an order that father not use any marijuana, observing: "[T]he voters of California have authorized that you can get a medical marijuana license for various reasons. He's got one. If he's got a valid one, then I'm out of it." Notwithstanding its recognition of the Compassionate Use Act of 1996 (Health & Saf. Code, § 11362.5, subd. (a)), the juvenile court ordered father to "seek to find an alternative to medicinal marijuana for his medication or treatment services." Father additionally was ordered to attend conjoint counseling with mother. Father timely appealed from the jurisdictional and dispositional orders.

---

[4]    All other allegations were dismissed.

**DISCUSSION**

Father contends there was insufficient evidence of two necessary elements for section 300, subdivision (b) dependency jurisdiction based on substance abuse (1) that father *abused* any substance, including marijuana, and (2) that father's medical marijuana use caused E.B. to suffer serious physical harm or put her at risk of suffering serious physical harm. Respondent argues that substantial evidence supported jurisdiction because (1) it was reasonable to infer that father was caring for E.B. while under the influence of marijuana, and (2) father reflected poor decisionmaking by leaving E.B. alone with mother. As we shall explain, we find father's arguments persuasive.

The standard of review of a challenge to the sufficiency of the evidence to support a section 300 jurisdictional finding is well settled: "the issue is whether there is evidence, contradicted or uncontradicted, to support the finding. In making that determination, the reviewing court reviews the record in the light most favorable to the challenged order, resolving conflicts in the evidence in favor of that order, and giving the evidence reasonable inferences. Weighing evidence, assessing credibility, and resolving conflicts in evidence and in the inferences to be drawn from evidence are the domain of the trial court, not the reviewing court. Evidence from a single witness, even a party, can be sufficient to support the trial court's findings." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 450-451 (*Alexis E.*).)

Section 300, subdivision (b)(1) provides in pertinent part: "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, . . . by the inability of the parent or guardian to provide regular care for the child due to the parent's . . . substance *abuse*. . . . The child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness." (Italics added.) Under section 300, subdivision (b), jurisdiction is proper if there is substance abuse, causation, and serious physical harm or a substantial risk of such harm to the child. (*In re Rebecca C.* (2014) 228 Cal.App.4th 720, 724-725 (*Rebecca C.*).) Dependency jurisdiction cannot be based on a parent's *use* of

5

medical marijuana any more than it can be based on a parent's use of any prescribed medication. (*Alexis E., supra*, 171 Cal.App.4th at p. 453.)

Recently, in *Rebecca C.*, this court considered the prerequisites for jurisdiction based on a substance abuse allegation under section 300, subdivision (b)—the issue here. In *Rebecca C.*, the mother tested positive for methamphetamine, amphetamine, and marijuana. (*Rebecca C., supra*, 228 Cal.App.4th at p. 721.) The mother admitted to using methamphetamine, describing her current use as a relapse. (*Id*. at p. 722.) The mother also admitted to having a substance abuse problem. (*Ibid*.) The mother had a prior dependency court case as a result of her drug use and had criminal convictions for drug-related offenses. (*Ibid*.) Her criminal convictions included being under the influence of a controlled substance and possession of marijuana for sale. (*Ibid*.) It was undisputed that mother used marijuana, and mother reported that at one point she had a physician recommendation for its use as a result of a pinched nerve in her back. (*Id*. at p. 723.)

We concluded that the foregoing evidence supported the first element, i.e., mother suffered from a substance abuse problem. As a result of her long-term drug use, mother was involved in the criminal court system and dependency court system. (*Rebecca C., supra*, 228 Cal.App.4th at p. 726.) Although mother had participated in a prior drug program, she relapsed and admitted she had a substance abuse problem. (*Ibid*.) Substantial evidence did not require an official medical diagnosis. (*Id.* at pp. 726-727.)

Despite finding mother had a substance abuse problem, we concluded that the mother posed no risk to Rebecca. (*Rebecca C., supra*, 228 Cal.App.4th at pp. 727-728.) We emphasized that physical harm cannot be presumed from a parent's substance abuse but must be demonstrated by the evidence in the case. (*Id*. at p. 728.) We rejected DCFS's argument, reasoning as follows: "DCFS . . . argues that methamphetamine, amphetamine and marijuana are well recognized to be substances which cause hallucinogenic or stimulant-driven behavior. DCFS argues that '[t]he risk to a child being cared for by a parent under the influence of such substances is not speculative.' We do not accept DCFS's argument. It excises out of the dependency statutes the elements of causation and harm. In other words, DCFS essentially argues that, when a parent engages in substance abuse,

dependency court jurisdiction is proper. This is not what the dependency law provides. Further, if DCFS's position were accepted, it would essentially mean that physical harm to a child is *presumed* from a parent's substance abuse under the dependency statutes, and that it is a parent's burden to prove a negative, i.e., the *absence* of harm. Again, this is not what the dependency law provides. We agree with Mother that the evidence in the case is not sufficient to support the finding that her substance abuse is causing, or there is a risk it will cause, physical harm to Rebecca." (*Id*. at pp. 727-728.)

## 1. *Substance Abuse*

As *Rebecca C.* explained, the first question in analyzing father's challenge to the sufficiency of the evidence is whether there was evidence of substance abuse. We find none. As respondent acknowledges, DCFS was willing to dismiss the count alleging father suffered from a substance abuse problem. Father had no prior dependency proceedings and no criminal convictions based on his marijuana possession or use. He was able to maintain a job. There was no evidence that he failed to adequately supervise E.B., and both DCFS and the court recommended that she remain in his care. Marijuana use alone is insufficient to support jurisdiction. (*Destiny S., supra*, 210 Cal.App.4th 999, 1003; *Alexis E., supra*, 171 Cal.App.4th at p. 453.)

Respondent's argument that father exercised poor judgment by leaving E.B. in mother's care is not persuasive. The first time mother presented a risk, father reported her conduct. Far from demonstrating poor judgment, father's actions reflect a strong desire to protect his daughter E.B. even at the risk of jeopardizing his relationship with mother and even though it required he move out of the family home. The evidence does not support the inference that father exercised poor judgment as a result of his marijuana use. Moreover, father no longer lived with mother and mother was permitted only monitored visitation with E.B. thereby negating any concern that E.B. would be left alone with mother.

## 2. *Risk to E.B.*

The second element is risk to E.B.; risk is a prerequisite to jurisdiction. (*In re David M*. (2005) 134 Cal.App.4th 822, 830 [jurisdictional order reversed because, even if mother suffered substance abuse problem, there was no evidence that the problem created a

substantial risk to her children]; see *Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322, 1346 [mother's positive test for marijuana did not pose a danger to mother's children].)

Here, even assuming father abused marijuana, there was no evidence E.B. suffered any harm or the substantial risk of harm. E.B. appeared to be developing appropriately and had no mental or emotional issues. There was no evidence E.B. was exposed to marijuana, secondhand smoke, or drug paraphernalia. There was no evidence father's marijuana use rendered him unable to care for E.B. There was no prior harm to E.B. resulting from father's marijuana use or abuse that would support the inference of future harm. Although because of E.B.'s tender age, the absence of adequate care may pose an inherent risk to her (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824), here there was no evidence father failed to adequately care for E.B.; respondent does not argue otherwise; and E.B. was never removed from father's care.

In finding father posed a risk to E.B., the court asked the wrong question—whether father's marijuana use was pursuant to a valid identification card. The relevant issue for purposes of the dependency proceedings was whether father posed a risk to E.B., not whether his use of marijuana was legal. (See *Maggie S. v. Superior Court* (2013) 220 Cal.App.4th 662, 672 [parent's criminal conduct and incarceration does not necessarily support juvenile dependency jurisdiction].) The legal use of marijuana may present a risk of harm to a child (*Alexis E., supra*, 171 Cal.App.4th at p. 452), and father's possession of a card is not determinative. With respect to risk, however, the court identified no evidence suggesting father's marijuana use (or assumed abuse) placed E.B. at risk of serious physical harm or illness as required under section 300, subdivision (b).

Respondent's argument that father cared for E.B. while under the influence is not supported by the record. There was no evidence that she was harmed, neglected, or inappropriately cared for while in father's custody. There was no evidence father smoked marijuana in E.B.'s presence or subjected her to secondhand smoke. There was no evidence that father behaved differently around E.B. because of his marijuana use. The social worker who interviewed father noted that he was calm, soft-spoken, cooperative, and polite. When

8

the social worker observed E.B., she was clean, dressed appropriately, well-groomed, and without marks or bruises. The record does not support the conclusion that father's marijuana use interfered with his ability to care for E.B.

This case is distinguishable from those finding a parent's substance abuse problem posed a risk to the child. For example in *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1217, 1219, the mother lied about her drug use, had an unstable lifestyle or cavalier attitude toward childcare, and used drugs even while pregnant. The father violated his conditions of parole by smoking marijuana. In *Alexis E., supra*, 171 Cal.App.4th at pages 452-453, the child was forced to breathe secondhand smoke, and the father's demeanor changed when he smoked marijuana making him irritable and impatient when caring for his child. He would "snap[]" at the children and was "less patien[t]" with them when he smoked marijuana. (*Id.* at p. 453.) In contrast here, there was *no* evidence linking father's marijuana use to a risk to E.B. As a result, the juvenile court's jurisdictional order must be reversed. (*In re Drake M.*, *supra*, 211 Cal.App.4th at p. 769.) Because the portion of the jurisdictional order finding father unfit must be reversed, the portion of the dispositional order concerning father also must be vacated. (*Destiny S., supra*, 210 Cal.App.4th at p. 1005.)

## DISPOSITION

The jurisdictional and dispositional orders as to father are reversed. Those orders with respect to mother are affirmed.


FLIER, J.

WE CONCUR:


RUBIN, ACTING P. J.


GRIMES, J.

9